**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CELESTE WILLIAMS, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | NO.  08-3031 |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S. J.                                                                January 14, 2009

Currently pending before the Court is a Motion for Judgment on the Pleadings by

Defendant Allstate Insurance Company and the Response thereto of Plaintiff Celeste Williams.

For the following reasons, the Motion is denied.

## I.   FACTUAL AND PROCEDURAL HISTORY

According to the facts set forth in the Complaint, Defendant Allstate Insurance

Company ("Allstate") provided coverage for Plaintiff Celeste Williams, under Policy Number 9

08 936924 02/28.  (Compl. ¶ 3.)  On December 28, 2006, Plaintiff was involved in a motor

vehicle accident, using the car insured under the above policy, resulting in bodily injury and

disability, including cervical, thoracic, and lumbar strain and sprain; mild to moderate active

L5/S1 radiculopathy bilaterally; dissynergic defacation; functional rectosigmoid obstruction;

obstructed defecation; and/or pelvic floor dysfunction.  (Id. ¶¶ 4-5.)  Her neck and back injuries

were treated primarily by chiropractor Dr. Daniel Breninghouse, in consultation with physical

medicine and rehabilitation specialist Stephen J. Masceri, M.D.  (Id. ¶ 6.)  Her abdominal

complaints were managed by Robert S. Fisher, M.D., Chief of the Gastroenterology Section of the Department of Medicine at Temple University Hospital.  (Id. ¶ 7.)

Immediately after the motor vehicle accident, Plaintiff gave timely notice of her claim to Defendant and submitted proof of the nature and amount of both (1) the medical expenses she incurred as a result of the accident, and (2) the work loss benefits to which she was entitled due to her accident-related disability.  (Id. ¶¶ 10-11.)  Allstate initially accepted and paid Plaintiff's claim for first party medical and wage loss benefits.  (Counterclaim ¶ 8; Answer to Counterclaim ¶ 8.)  Thereafter, in July 2007, Defendant requested that Plaintiff attend a medical consultation by orthopaedic surgeon Leonard A. Brody, M.D.  (Id. ¶ 14.)   Plaintiff complied and Dr. Brody issued a report, concluding that Plaintiff had recovered from any soft tissue, spinal injuries resulting from the accident.  (Compl. ¶ 14; Counterclaim ¶¶ 9-10; Answer to Counterclaim ¶¶ 9-10.)  He noted that Plaintiff's main problem was her chronic constipation, on which he was not qualified to opine.  (Compl. ¶ 14.)  Based on Dr. Brody's report, on September 6, 2007, Allstate informed Plaintiff and her treating providers of its determination that Plaintiff would not benefit from any further treatment for her neck or back injuries.  (Counterclaim ¶ 11; Answer to Counterclaim ¶ 11.)

Subsequently, Defendant requested that Plaintiff attend a physical examination by a gastroenterologist on October 30, 2007.  (Counterclaim ¶¶ 12-13; Answer to Counterclaim ¶¶ 12-13.)  By way of letter dated October 23, 2007, Plaintiff, through her counsel, unilaterally cancelled the examination with no explanation.  (Counterclaim ¶ 14; Answer to Counterclaim ¶ 14, Ex. 3.) Plaintiff then forwarded to Defendant a report by treating gastroenterologist Dr. Fisher, dated December 13, 2007, that attributed Plaintiff's abdominal/constipation complaints to her involvement in the motor vehicle accident of December 28, 2006, and opined that "she is

unable to work under the present conditions and I do not anticipate any change in her condition given the currently available medical options." (Compl. ¶ 15.) Following the submission of Dr. Fisher's report, Plaintiff's counsel wrote Defendant indicating that Defendant was not entitled to conduct any further medical examination of Plaintiff, stating:

> Dr. Fisher's report and CV should also lay to rest any need for an insurance medical examination as originally requested by Perspective on behalf of Allstate.  As you may know, Allstate Insurance Company is not entitled to conduct an insurance medical examination without "good cause" upon motion filed with the Court in accordance with Pa. R. C. P. 4010.  The "good cause" requirement is designed to protect parties against unwarranted invasion of their privacy and preclude use of such examination for improper purposes. *McGratton v. Burke*, 674 A.2d 1095, 449 Pa. Super. 597, Super. 1996, reargument denied, appeal denied 685 A.2d 546, 546 Pa. 667.

(Answer to Counterclaim, Ex. 1.)  When Allstate attempted to reschedule the examination, Plaintiff's counsel sent another letter, dated March 11, 2008, reiterating that Plaintiff would not undergo any further physical examination.  (Id. ¶ 15, Ex. 4.)  As a result of Plaintiff's refusal, Allstate stopped paying her first party benefits.  (Counterclaim ¶ 18; Answer to Counterclaim ¶ 18.)  Allstate never (1) produced a medical report from any physician, which either refuted or even questioned the reasonableness and necessity of Dr. Fisher's treatment or the opinions expressed in his December 18, 2007 report; (2) filed a petition to compel a medical examination, particularly by a gastroenterologist; or (3) contacted either Plaintiff's counsel or Dr. Fisher to request additional documentation and/or explanations for Dr. Fisher's opinion.  (Compl. ¶¶ 16-18.)

## II.   PROCEDURAL HISTORY

On February 27, 2008, Plaintiff filed a Civil Complaint with Bucks County Magisterial District Justice Leonard J. Brown seeking to recover first party wage loss and

medical benefits.  (Counterclaim ¶ 20; Answer to Counterclaim ¶ 20.)  Concurrently, Dr. Daniel Breninghouse filed a separate Civil Complaint before District Justice Brown seeking recovery of his outstanding bills for chiropractic treatment.  (Answer to Counterclaim ¶ 20.)  The two cases were consolidated.  Id.  On April 29, 2008, District Justice Brown entered (1) a judgment against Allstate and in favor of Plaintiff for $4,000; and (2) a judgment against Allstate and in favor of Dr. Breninghouse for the following:  unpaid chiropractic bills ($2,201.89), court costs ($120), and attorney fees ($500).  (Counterclaim ¶ 21; Answer to Counterclaim ¶ 21.)  Defendant appealed only the verdict in favor of Plaintiff.  (Counterclaim ¶ 22; Answer to Counterclaim ¶ 22.)

On June 10, 2008, Plaintiff filed a Complaint in the Court of Common Pleas of Bucks County, Pennsylvania, alleging that (1) "Defendant's failure to pay medical and work loss benefits to which plaintiff Celeste Williams is entitled is without reasonable foundation, and/or defendant has acted in a wanton or unreasonable manner and in bad faith in refusing to pay said benefits when due," and (2) "Defendant's failure to pay medical and work loss benefits to which plaintiff Celeste Williams is entitled is without reasonable foundation, and/or defendant has acted in a wanton or unreasonable manner and in bad faith in refusing to pay said benefits when due, thus requiring plaintiff Celeste Williams[] to secure the services of [counsel]. . . "  (Compl. ¶¶ 19-20.)  That Complaint was removed to federal court by Defendant on June 30, 2008.

Upon removal, Defendant filed an Answer to the Complaint, as well as a Counterclaim for Declaratory Judgment.  In the Counterclaim, Defendant alleged that the policy explicitly provided that, "[t]he [insured] shall submit to mental and physical examinations by physicians selected by [Allstate] when and as often as [Allstate] may reasonably require. [Allstate] will pay the costs of such examinations.  (Counterclaim ¶ 6.)  An endorsement to the

4

policy, effective December 28, 2006, further provided that "[n]o one may bring an action against [Allstate] in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under Part 2 – First Party Benefits Coverage, unless there is full compliance with all policy terms. . . ." (Id. ¶ 7.)  In light of these contractual provisions, Defendant's Counterclaim requested an order (1) declaring that Plaintiff may not maintain a claim for first party benefits under the policy in connection with injuries allegedly sustained in the December 28, 2006, motor vehicle accident because she failed to comply with the policy; and (2) declaring that Plaintiff may not maintain her claims against Allstate in this lawsuit because it is barred by the policy provision requiring full compliance with its terms prior to bringing an action against Allstate.  (Id. at 9.)

On November 25, 2008, following Plaintiff's Answer to the Counterclaim, Defendant moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  The Court now turns to the merits of this motion.

## III.  STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  Judgment under Rule 12(c) will only be granted where, viewing all facts and reasonable inferences in the light most favorable to the non-moving party, the moving party has clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law.  Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988).  When considering such a motion, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party."  Rocks v. City of

5

Phila., 868 F.2d 644, 645 (3d Cir. 1989).  The court will not, however, accept unsupported

conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual

allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).[1]

## IV.  DISCUSSION

Defendant Allstate premises its motion on the theory that because the precise

policy terms conditioned payment of benefits on Plaintiff's submission to medical examinations

as often as Allstate may "reasonably require," Plaintiff's undisputed refusal to submit to a

medical examination regarding her gastrointestinal injuries constituted a breach of contract,

entitling Allstate to curtail continued payment of benefits.  In response, Plaintiff contends that the

medical examination provision of the policy is rendered unenforceable by section 1796 of

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRA"), 75 Pa.C.S.A. § 1701,

*et seq.*, which mandates that Defendant petition the state court and show good cause for an order

compelling such an examination.  As Defendant never filed any such petition or obtained any

such order, Plaintiff asserts that its stoppage of benefits was both in violation of the insurance

contract and in bad faith.

In light of these conflicting arguments, the Court must determine whether an

insurance policy that permits an insurer to demand reasonable examinations of its insured as a

condition precedent to coverage is valid and enforceable in light of section 1796(a) of the

MVFRA.  Such an inquiry requires analysis of an area of state law on which the Pennsylvania

Supreme Court has not yet spoken.  It is well-established that "[w]ith respect to an issue of state

law in a diversity case, when there is no decision from the state's highest court directly on point,

---

1.   Some of the cited cases refer to Rule 12(b)(6) motions.  The difference between Rules 12(b)(6) and 12(c) is
purely procedural and there is "no material difference in the applicable legal standards."  Spruill v. Gillis, 372 F.3d
218, 223 n.2 (3d Cir. 2004).

we are charged with predicting how that court would resolve the question at issue." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006).  "When predicting how the state's highest court would resolve the issue, we must take into consideration:  (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." Id.   Although due deference is given to the decisions of all lower Pennsylvania courts, "[t]he rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996).

Given these principles, the Court begins with an examination of the pertinent statute.  Section 1796(a) of the MVFRA permits a court to order a person to submit to a physical or mental examination by a physician upon motion or petition for good cause shown by the insurance company.  75 PA. CONS. STAT. 1796(a).[2]  The submission of a claim to the insurance carrier, not the institution of legal proceedings, triggers the insurance company's right to file such a petition to the court requiring the insured to submit to a physical examination. State Farm Mut. Auto. Ins. Co. v. Morris, 432 A.2d 1089, 1091 (Pa. 1981).  "[A] good cause showing under §

---

2.   The statute states, in pertinent part:

> **a) General rule.--**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 PA. CONS. STAT. 1796(a).

1796(a) requires a certain level of specificity so as [to] ensure that a claimant will not be forced to submit to unnecessary examinations sought in bad faith."  Horne v. Sentry Ins. Co., 588 A.2d 546, 548 (Pa. Super. 1991) (internal quotations omitted).  The level of specificity required of a petition under section 1796 necessitates that the insurer make the following allegations:  "(1) [the] insured's proofs supplied in support of the claim are inadequate; (2) the proposed physical examination will substantially assist the insurer in evaluating the claim; and (3) the amount of the claim justifies a court order compelling the claimant to submit to a physical examination."  Sentry Ins. Co. v. Feldman, 7 Pa. D. & C.4th 250, 252 (1990).

As previously noted, the Pennsylvania Supreme Court has yet to opine on the breadth of this statute and whether it forecloses conflicting policy provisions.  The Pennsylvania Superior Court, however, explicitly discussed the interplay between section 1796 and a policy of insurance that permits an insurance company to unilaterally compel medical examinations, without a showing of "good cause."  Fleming v. CNA Ins. Cos., 597 A.2d 1206 (Pa. Super. 1980).  In Fleming, the appellants were insured under a policy issued to them by appellee CNA at a time when they were involved in a motor vehicle accident.  Id. at 1207.  Appellants sought treatment for their injuries and submitted to CNA claims for medical bills and lost wages.  Id.  A year later, when appellants were informed that no further benefits would be paid, they instituted an action to recover basic medical and income loss benefits from CNA.  Id.  CNA filed a motion to Compel Medical Examination pursuant to Pennsylvania Rule of Civil Procedure 4010,[3]

_____

3.   Pennsylvania Rule of Civil Procedure 4010 provides another route for obtaining a medical examination. Specifically, "[w]hen the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by an examiner or to produce for examination the person in the party's custody or legal control."  PA. R. CIV. P. 4010(a)(2).  The rule goes on to hold that "[t]he order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made."  Id. at
(continued...)

Section 1796 of the MVFRL, and the policy of insurance issued to Appellants.  Id.  The lower

court found good cause and granted the motion.  Id.

       On appeal, the Pennsylvania Superior Court declined to address the "good cause"

requirement of both Rule 4010 and Section 1796, instead focusing on the insurance policy, which

stated:

> Duties of an Injured Person.  The injured person shall:
>
> a.     Give us written proof of claim, under oath if we request;
> b.     Authorize use to obtain medical information;
> c.     *Submit to physical examination by a physician of our choice*;
> d.     Not construe payment of medical claims as an admission of liability.

Id. (emphasis added).  The court noted that "[t]his contract provision entered into between the

parties clearly requires Appellants' submission to a medical exam to be performed by a doctor

chosen by CNA.  There is no prerequisite showing of 'good cause' necessary."  Id.  Based on this

policy provision alone, the Court affirmed the order of the trial court requiring Appellants to

submit to a medical exam.  Id. at 1208.

       As indicated by Plaintiff, however, Fleming's holding has come under scrutiny by

a single jurist from the Pennsylvania Court of Common Pleas, Allegheny County.  In a pair of

cases – Erie Ins. Exch. v. Dzandony, 39 Pa. D. & C.3d 33 (1986) and Nationwide Ins. Co. v.

Hoch, 36 Pa. D. & C.4th 256 (1997) – the Honorable R. Stanton Wettick, Jr. deemed

unenforceable contractual provisions requiring an insured's submission to medical examinations

as a condition precedent to benefits.  In Erie, the insureds had filed claims with the insurer for

payment of medical bills covering treatment for injuries allegedly sustained in an automobile

---

3.  (...continued)
4010(a)(3).

accident.  Id. at 34.  The insurer petitioned the court to compel a physical examination.  Id.

Although the insurer did not demonstrate good cause, it argued that the court should grant its

petition because the insureds agreed to submit to examinations under the policy, which stated,

"[t]he person we protect shall submit to mental and physical examinations by physicians selected

by us when and as often as we may reasonably require.  We will pay the cost of such

examinations."  Id. at 35-36.  The court rejected the insurance company's request for several

reasons.  First, it found that the MVFRA comprehensively regulated the area of when an insured

may be compelled to submit to a physical examination and that "[p]rovisions within an insurance

contract which impose additional burdens on an insured before the insured may recover these

benefits to which the insured is statutorily entitled are inconsistent with this legislative scheme."

Id. at 36.  As section 1796 of the MVFRL specifically required a petition showing good cause for

an insurance company to obtain a medical examination, a contractual clause allowing an insurer

to unilaterally demand such an examination was inconsistent with the insurer's obligation to pay

benefits whenever the insured submitted reasonable proof supporting his or her claim.  Id. at 37-

38.  Second, the court determined that, even if such a provision could be included in an insurance

policy subject to the MVFRL, it could only be enforced by lawsuit, not by petition.  Id. at 38-39.

Finally, the court noted that the insurer suffered no harm from the alleged breach of its insurance

agreement, since it could petition for an order directing a claim to appear for an examination

under section 1796.  Id. at 39.

     Subsequently, and following the Superior Court's Fleming decision, Judge

Wettick had the opportunity to revisit this issue in the case of Nationwide Ins. Co. v. Hoch, 36

Pa. D. & C.4th 256, 259 (1997).  In that case, the insurer petitioned to compel an independent

medical examination under both 75 Pa.C.S. § 1796, and the insurance policy, which provided

that the insured, if injured, must "submit to examinations by company-selected physicians as often as the company reasonably requires."  Id. at 258-59.  Citing extensively from its previous decision in Erie, the court deemed the contract provision unenforceable.  Id. at 259-63.  In response to the insurance company's invocation of Fleming, the court distinguished the Superior Court's ruling as follows:

> In its motion to compel the medical examinations [in Fleming], the insurance company based its request for medical examinations on section 1796, Pa.R.C.P. no. 4010, and a policy provision that the insured shall submit to a physical examination by a physician of the insurance company's choice.  The Superior Court affirmed the trial court's order without discussion of whether the insurance company had met the good cause requirement of section 1796 because the policy provision required the insureds to submit to a medical examination without any showing of good cause.  In its opinion, the Superior Court stated that appellants "did not challenge this policy provision as being void as against public policy or void as unconscionable in their answer in the lower court or on appeal." [Fleming, 409 A.2d] at 289; 597 A.2d at 1208.
>
> In the present case, the insured at oral argument opposed Nationwide's petition on the basis of my ruling in Erie Insurance Exchange v. Dzandony, supra.  Since the Fleming opinion never reached the issues raised in my opinion in Erie Insurance Exchange v. Dzandony, there is no appellate court case law that is inconsistent with this opinion.  Consequently, I am denying Nationwide's petition on the basis of my opinion in Erie Insurance Exchange v. Dzandony.

Id. at 263-64.

Notably, since the issuance of the Hoch decision in 1997, no Pennsylvania appellate court, or any court for that matter, has either affirmatively cited this holding or rejected it as erroneous.[4]  Such a conflict in Pennsylvania case law has thus gone unresolved for at least a

---

4.   In her Sur-reply Brief, Plaintiff argues that Judge Wettick's interpretation has had "considerable precedential value 'in the trenches' of motion court."  (Pl.'s Sur-reply Br. 3, n.1.)  Specifically, she contends that "on three prior

(continued...)

decade, leaving this Court with an unclear legal backdrop for deciding the present case. Nonetheless, we remain cognizant of our duty, not to resolve this inconsistency, but to predict how the Pennsylvania Supreme Court would decide the issue.  Given that task, we decline, on several grounds, to find Hoch controlling of the pending matter.

First, notwithstanding its efforts to distinguish itself, the holding of Hoch flies directly in the face of the higher court's ruling in Fleming.  Fleming explicitly held that because the insurance policy contained an express provision requiring the insured to submit to a medical examination for a contingency for insurance coverage, the insurer was not required to make a showing of good cause under section 1796(a).  Fleming, 597 A.2d 1207-08.  To date, other than the aforementioned decisions in Hoch and Erie, the Superior Court's ruling in Fleming has never been overruled, rejected, criticized, or meaningfully distinguished by any Pennsylvania court. Indeed, on at least two occasions following the Fleming and Hoch decisions, Pennsylvania trial courts have affirmed the principle that an insurer may enforce a policy provision requiring an insured to submit to medical examinations without a separate petition or a showing of good cause.  See Hollock v. Erie Ins. Exchange, 54 Pa. D. & C. 4th 449, 532-33 (2002) (noting, albeit in *dicta*, that an insurance policy containing a provision requiring the insured to submit to a medical examination gives the insurer the right to request that the insured voluntarily undergo

---

4.  (...continued)

occasions where a dispute arose as to whether or not a medical examination of an insured was required, every other insurance carrier acknowledged their responsibilities imposed by Section 1796 of the MVFRL and filed a Petition to Compel a Medical Examination in the applicable Court of Common Pleas."  (Id. at 3.)  She goes on to claim that, "on each such occasion, the insurance carrier's request for a medical examination was denied, based largely upon Judge Wettick's interpretation of the 'good cause' requirement of Section 1796 as articulated in *Nationwide Insurance Company v. Hoch*."  (Id. at 3, n.1 (citing Rushbrook v. Conklin, CCP of Bucks County Case No. 04-3534; Amereld and Michaelis v. Barton, et al., CCP of Bucks County Case No. 02-7731, and Nationwide v. Everitt, CCP of Monroe County Case No. 2007-4982).)

　　　　Aside from the fact that Plaintiff does not provide copies of any of these unpublished rulings, she does not assert that they even touched on the issue before this Court of whether a conflicting contractual provision is enforceable under the MVFRL.  Accordingly, the Court gives this argument little weight.

such an examination or risk having the insurer deny coverage for failure to cooperate), aff'd, 842

A.2d 409 (Pa. Super. 2004); Olsofsky v. Progressive Ins. Co., 52 Pa. D. & C.4th 449, 479 n.2

(2001) ("If the insurance policy between the insurer and insured requires the insured to '[s]ubmit

to [a] physical examination by a physician of [the insurer's] choice,' the first-party benefits

insurer does not have to establish 'good cause' under section 1796 as a condition precedent to

compelling the insured to undergo a medical examination.").  Similarly, several Pennsylvania

treatises have affirmatively cited Fleming for the proposition that the existence of such a policy

provision negates any need for an order of the court prior to an insurance company's request for a

medical examination.  See, e.g., 7 STANDARD PENNSYLVANIA PRACTICE § 37:12 (2008) ("An

insurance company that provides benefits to its insureds is entitled to an order requiring them to

submit to an independent medical examination by a physician of the insurer's choosing, without

regard to whether the insurer meets the good cause requirement of . . . the Motor Vehicle

Financial Responsibility Law . . . where the insurance policy contains a provision imposing a

duty on the insureds to submit to a physical examination by a physician of the insurer's choice.");

14A SUMM. PA. JUR. 2D INSURANCE § 16:140 (2008) ("Although an insurer seeking to compel an

insured to submit to a medical examination ordinarily must demonstrate good cause for seeking

such an order, where the insurance policy lists among the duty of an insured who is an injured

person the obligation to submit to physical examination by a physician of the insurer's choice,

then the contract provision entered into between the parties requires the insured to submit to a

medical exam to be performed by a doctor chosen by the insurer and no prerequisite showing of

good cause is necessary.").  As this Court is bound to accord significant weight to rulings of an

intermediate appellate court in the absence of a "persuasive indication that the highest state court

would rule otherwise," we decline to reject the fundamental premise of <u>Fleming</u>.  <u>See</u> <u>U.S.</u>

<u>Underwriters Ins. Co. v. Liberty Mut. Ins. Co.</u>, 80 F.3d 90, 93 (3d Cir. 1996).

            Second, both Judge Wettick's and Plaintiff's efforts to distinguish <u>Fleming</u> on

public policy grounds are meritless.  As noted above, Judge Wettick concluded that the Superior

Court, in <u>Fleming</u>, did not address the situation where the insurance policy provision was

challenged as being violative of public policy and, thus, was not controlling on any such analysis.

<u>Hoch</u>, 36 Pa. D. & C.4th at 263-64.  He went on to reason that the contractual provision at issue

violated public policy by imposing an added burden on insured's right to recover benefits under

the MVFRL.  <u>Id.</u> at 261.

            Such reasoning, however, is insufficient to meet the "heavy burden required to

declare an unambiguous provision of an insurance contract void as against public policy."

<u>Generette v. Donegal Mut. Ins. Co.</u>, 957 A.2d 1180, 1190 (Pa. 2008).  "[P]ublic policy is more

than a vague goal which may be used to circumvent the plain meaning of the contract."

<u>Prudential Prop. and Cas. Ins. Co. v. Jefferson</u>, 185 F. Supp. 2d 495, 498 (W.D. Pa. 2002) (citing

<u>Hall v. Amica Mut. Ins. Co.</u>, 648 A.2d 755, 760 (Pa. 1994).  It requires "reference to the laws and

legal precedents and not from general considerations of supposed public interest."  <u>Id.</u>  While

contractual language may be deemed invalid as against public policy when it violates to statutory

language, "[i]t is only when a given policy is so obviously for or against the public health, safety,

morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may

constitute itself the voice of the community in [declaring that policy to be against public policy]."

<u>Neil v. Allstate Ins. Co.</u>, 549 A.2d 1304, 1305 (Pa. Super. 1988) (quoting <u>Mamlin v. Genoe</u>, 17

A.2d 407, 409 (Pa. 1941)).  "In the absence of a plain indication of that policy through long

governmental practice or statutory enactments, or of violations of obvious ethical or moral

standards, the Court should not assume to declare contracts . . . contrary to public policy.  The

courts must be content to await legislative action."  <u>Burstein v. Prudential Prop. and Cas. Ins.</u>

<u>Co.</u>, 809 A.2d 204, 207 (Pa. 2002) (quoting <u>Paylor v. Hartford Ins. Co.</u>, 536 Pa. 583, 640 A.2d

1234, 1235 (1994)).

    Nothing in the plain language or history of the MVFRL suggests that it was

intended to interfere with contractual bargaining rights between private individuals or to

foreclose any such insurance policy provision.[5]  The MVFRL was enacted "to foster financial

responsibility for damages caused to individuals on the roadways."  <u>Donegal Mut. Ins. Co. v.</u>

<u>Long</u>, 564 A.2d 937, 944 (Pa. Super. 1989), <u>aff'd</u>, 597 A.2d 1124 (Pa. 1991).  The specific

purpose of section 1796 is two-fold.  On one hand, it "prevent[s] harassment, untoward intrusion

and unwarranted examination."  <u>State Farm Ins. Cos. v. Swantner</u>, 594 A.2d 316, 322 (Pa. Super.

1991).  On the other hand, it was designed to ensure that the insured could not "ignore reasonable

limitations on treatment by continuing in treatment without validation or justification."  <u>Id.</u>  The

Pennsylvania Superior Court has clearly found that a contractual provision requiring the insured

to attend a medical examination as a prerequisite to benefits does not violate these twin

purposes.[6]  <u>Fleming</u>, 597 A.2d 1207-08.  Further, the policy provision in this case is actually

---

5.   Plaintiff cites several cases for the proposition that provisions in an insurance contract that are in conflict with or repugnant to a statute must yield to the statutory laws.  (Pl. Reply Br. 14-15 (citing <u>Generette v. Donegal Mut. Ins. Co.</u>, 957 A.2d 1180, 1190 (Pa. 2008); <u>Allwein v. Donegal Mut. Ins. Co.</u>, 671 A.2d 744 (Pa. Super. 1996); <u>Kmonk-Sullivan v. State Farm Mut. Auto. Ins.</u>, 746 A.2d 1118 (Pa. Super. 1999) (<i>en banc</i>).)  While the general principle is true, those cases involved policy provisions that were in clear and indisputable conflict with the statute.

6.   Both Judge Wettick and Plaintiff contend that <u>Fleming</u> did not address the enforceability of a provision requiring an insured to submit to a physical examination.  The Court finds this to be an inaccurate characterization of <u>Fleming</u>.  In <u>Fleming</u>, the Superior Court expressly addressed the interplay between such a contractual provision and section 1796 of the MVFRL.  While the court noted that the insureds in that case "did not challenge this policy provision as being void as against public policy or void as unconscionable," it chose to order the insured to attend the examination pursuant to the contract, instead of simply affirming the trial court's finding of good cause.  <u>Fleming</u>, 597 A.2d at 1207-08.  In doing so, it impliedly considered the enforceability of such a provision in light of the MVFRL.  <u>See</u> <u>Watrel v. Comm. Dept. of Educ.</u>, 488 A.2d 378, 381 (Pa. Commw. 1985) ("As a general rule, an

(continued...)

consistent with the purposes of section 1796, as it limits physical examinations to when the insurance company "reasonably require[s]" them.  (Counterclaim ¶ 6.)  Finally, as aptly noted by Defendant, a more plausible interpretation of section 1796 suggests that it was designed to govern a situation where an insurance contract does not address the right to a medical examination, or in the case of a party outside the insurance contract making a claim for medical or wage loss benefits.[7]  It was not intended to be applied where the parties had a specific contractual agreement as to the requirement of medical examinations.[8]

Moreover, the Court cannot void the contract provision on the basis of Plaintiff's alternative policy argument that such a provision unfairly shifts the burden of establishing or challenging the reasonableness of a medical examination from the corporate insurer – who would only need to file a Petition to Compel on good cause shown – to the individual insured – who

---

6. (...continued)
agreement which violates a statutory provision, 'or which cannot be effectively performed without violating [a] statute, is illegal, unenforceable, and void *ab initio*.'") (quoting Gramby v. Cobb, 422 A.2d 889, 892 (Pa. Super. 1980), aff'd, 518 A.2d 1158 (Pa. 1986).

7.    Such an interpretation is bolstered by the case of Henzler v. Travelers Ins. Cos., 42 Pa. D. & C.3d 1 (1985), which involved section 1796's predecessor statute, section 401 of the No-fault Act.  In that case, the plaintiff suffered injuries as a passenger in the insured's car.  Id. at 2.  She sought and received medical and wage loss benefits under the driver's policy, which were later terminated based on her refusal to submit to a medical examination requested by the company.  Id. at 2-3.  The request was made pursuant to a policy provision that required that the "eligible person . . . submit to mental and physical examinations by physicians selected by the company when and as often as the company may reasonably require."  Id. at 3.  The court found that, as plaintiff was neither a named insured nor had a contract for insurance with the defendant insurance company, the No-fault Act governed the parties rights and duties.  Id. at 4.  "Contractual provisions between [the policyholder] and defendant as to matters not provided for in the No-fault Act in limitation or derogation of the No-fault Act are not applicable to a non-contracting party such as the plaintiff herein."  Id.
          As such, Henzler recognized that an insurance contract can, in fact, contain provisions "in derogation of" a statutory provision.  In such cases, the statutory enactment is meant to govern individuals not bound or covered by the contractual provisions who seek benefits.

8.    Defendant engages in a lengthy argument that the MVFRL is not "comprehensive legislation."  The court need not engage in such a discussion in light of our ultimate holding.  Nonetheless, we note that the Pennsylvania Supreme Court has described the MVFRL as a "comprehensive scheme for promoting financial responsibility in the motoring public."  Lewis v. Erie Ins. Exchange, 793 A.2d 143, 149 (Pa. 2002).  We leave to the Pennsylvania courts the question of how far the comprehensiveness of this scheme extends.

must initiate full-scale litigation.  Such an argument, while carrying a scintilla of truth, does not

establish that the contested contract provision is "so obviously against the public health, safety,

morals, or welfare that there is virtually unanimity of opinion in regard to it."  Neil, 549 A.2d at

1305.  Indeed, contrary to Plaintiff's argument that any such state law scheme would be

"illusory" or "bizarre," (Pl.'s Sur-reply Br. 12-13), numerous other states, acting within the

framework of their own no-fault insurance statutes, have consistently enforced contractual

provisions requiring an insured to submit to medical examinations as a condition precedent to

coverage.[9]  Accordingly, any argument that a contractual provision requiring an insured to submit

to reasonable medical examinations before payment of benefits is not clearly against public

policy.

> Finally, Plaintiff's attempts to factually distinguish Fleming from the present case

are unavailing.  Plaintiff contends that, in Fleming, the insurance carrier filed a motion to compel

---

9.   See, e.g., Jensen v. Am. Fam. Mut. Ins. Co., 683 P.2d 1212, 1213 (Colo. App. 1984) (finding that an insurance policy provision requiring insured to submit to physical and mental examinations when and as often as insurer may reasonably require was enforceable and did not pose an impermissible burden on Colorado's no-fault statute, designed to avoid inadequate compensation to victims of automobile accidents); Falagian v. Leader Nat. Ins. Co., 307 S.E.2d 698, 700 (Ga. App. 1983) ("The defendant was authorized under the circumstances to have plaintiff submit to a medical examination pursuant to the terms of the insurance contract.  Plaintiff's refusal was a breach of the insurance contract in failing to comply (filing suit instead).");  Bailey v. Metro. Prop. & Cas. Ins. Co., Civ. A. No. 01307, 2002 WL 1555100, at *3 (Mass. Super. Apr. 29, 2002) (noting that a claimant's refusal to participate in an independent medical examination, where the contract explicitly states that an insured must do so, allows the insurance company to avoid the contract without any showing of prejudice); Huntt v. State Farm Mut. Auto. Ins. Co., 527 A.2d 1333, 1337 (Md. App. 1987) (finding nothing in Maryland's no-fault statute that would render unenforceable State Farm policy provision requiring insured to submit to a medical examination as a condition precedent to payment of benefits); Williamson v. State Farm Ins. Co., Civ. A. No. 20182, 2004 WL 1178351, at *4-5 (Ohio Ct. App. May 28, 2004) (holding that where an insurance policy required that insured making a claim submit to medical examinations "as often as we reasonably may require," insurer did not have to obtain a court order pursuant to the rules of civil procedure to compel examination; rather court found that insured breached the contract by refusing to cooperate and thus justified insurer's denial of coverage); see also 5 A.L.R.3d 929, § II.3 (2008) ("[I]n the few cases in which this question has been specifically raised, the validity of a provision of an insurance policy requiring an insured to submit to a physical examination when claiming disability or accident benefits has been affirmed, the courts generally saying that such a provision is reasonable.")  Several states have actually enacted statutes authorizing insurers to include reasonable provisions in motor vehicle liability policies for mental and physical examination of those persons claiming personal injury protection benefits.  See, e.g., FLA. STAT. 627.736(7) (2001); KAN. STAT. ANN. § 40-3115(a) (1986); N.J. STAT. ANN. § 39:6A-13(d). (1973).

a medical examination, whereas Defendant, in this case, never filed a petition to compel an examination or to otherwise enforce the policy provision.  According to Plaintiff, its failure to do so renders its stoppage of benefits improper, irrespective of its contractual rights.  Nothing in Fleming, however, requires the filing of such a motion to compel a medical examination where the policy language unequivocally provides for such examinations.  Indeed, in light of Fleming's holding that a medical examination provision obviates the need for a showing of good cause, a petition to compel an examination pursuant to such a provision would be nothing more than a time-consuming, rubberstamp formality.  Notably, even the Erie decision, upon which Plaintiff places the utmost reliance, recognized that a contractual provision requiring an insured to submit to medical examinations could only be enforced through a lawsuit seeking specific performance, not via a petition under either 75 Pa.C.S. § 1796 or Pa. R. Civ. P.4010.  See Erie, 39 Pa. D. & C.3d at 38-39.

        In short, based on the current state of the law in Pennsylvania, this Court predicts that the Pennsylvania Supreme Court would find that a contractual provision, which requires an insured to submit to reasonable medical examinations as a condition precedent to insurance coverage, is enforceable, notwithstanding section 1796 of the MVFRL.  Accordingly, the Court rejects Plaintiff's request that the provision be deemed void.

        This conclusion, however, does not foreclose further analysis.  Keeping in mind the standard for a motion for judgment on the pleadings, the Court must now interpret the contract to determine whether Plaintiff's failure to submit to Defendant's request for a medical examination with a gastroenterologist entitled Defendant, as a matter of law, to stop benefits.  As a threshold matter, "[t]he task of interpreting a contract is generally performed by a court, rather than by a jury. . . . [t]he goal of that task is, of course, to ascertain the intent of the parties as

manifested by the language of the written instrument."  Standard Venetian Blind Co. v. Am.

Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (1983) (internal citations omitted).  The

insurance contract must be construed as a whole with all of its provisions given their proper

effects.  Luko v. Lloyd's London, 573 A2d 1139, 1142 (Pa. Super. 1990).  Where "the language

of an insurance contract is clear and unambiguous, a court is required to enforce that language."

Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (citing Standard Venetian

Blind, 469 A.2d at 566).  Where an insurance policy provision is ambiguous, however, it is to

"be construed against the insurer and in favor of the insured ."  McMillan v. State Mut. Life

Assur., 922 F.2d 1073, 1075 (3d Cir. 1990); State Farm Fire & Cas. Co. v. MacDonald, 850 A.2d

707, 710 (2004).

As noted above, the contract of insurance, in this case, is unambiguous, stating

that "[t]he eligible person shall submit to mental and physical examinations by physicians

selected by us when and as often as we may *reasonably* require.  We will pay the costs of such

examinations."  (Counterclaim ¶ 6 (emphasis added).)  Although it is undisputed that Plaintiff

refused to attend a physical examination required by Defendant, whether that examination was

"reasonably requir[ed]" is less than obvious.  Had Plaintiff simply based her refusal to attend the

examination on Defendant's failure to obtain an order under section 1796, her non-cooperation

could be deemed a contractual violation, which, in turn, would (1) permit Allstate to discontinue

benefits and (2) preclude, under the terms of the contract, Plaintiff's lawsuit.  Plaintiff, however,

vigorously argues that Defendant's request for the examination was unreasonable and, thus, did

not contractually require her to attend.[10]  As Defendant seeks judgment on the pleadings under

_____

10.   For example, in Plaintiff's Answer to the Counterclaim, she denied that "Allstate had any legitimate reason to
question the GI treatment provided by Dr. Robert Fisher for the reasons set forth in plaintiff's counsel's

(continued...)

Federal Rule of Civil Procedure 12(c), the Court is required to accept Plaintiff's allegations as true.  We cannot find, as a matter of law, that Plaintiff's refusal to comply with this provision was a breach of contract.  In turn, we are precluded from determining, at this stage of the litigation, that Allstate was legally entitled to disclaim coverage based on such non-cooperation.[11] The Court accordingly declines to grant judgment on the pleadings.

## V.  CONCLUSION

In light of the foregoing, the Court finds that Allstate's contract validly entitled it to reasonably request medical examinations of its insured, without a separate petition or showing of good cause, prior to paying or continuing to pay medical benefits.  Nonetheless, the

---

10.  (...continued)
correspondence of January 3, 2008 (Exhibit "1") and Dr. Fisher's report of December 18, 2007 (Exhibit "2")." (Answer to Counterclaim ¶ 12.)  In her Sur-reply Brief, Plaintiff argues:

> In the case *sub judice*, plaintiff contends that there is no 'reasonable basis' (i.e. no 'good cause') for a medical evaluation by a physician of Allstate's choice under the circumstances in this case.  All treating physicians (including the Chairman of the Department of Medicine Gastroenterology Section of Temple University Hospital) have concluded that plaintiff's debilitating GI condition is attributable to the MVA. . . . Allstate has offered no contrary medical opinions and has not requested any additional information or clarification from plaintiff's treating physicians.

(Pl.'s Sur-reply Br. 6-7.)

11.   Defendant argues that this case is also barred by a "fundamental principle" of insurance law that an insured's breach of the duty to cooperate will relieve the insurer from liability under policy where the failure to cooperate is substantial and the insurer has suffered prejudice as a result of the breach.  (Def.'s Mem. Supp. Mot. Judg. on the Pleadings 12.)  The cases cited by Defendant in support, however, involve a contractual "cooperation clause" and not a common law duty to cooperate inherent in insurance contracts.  See Forest City Grant Liberty Assoc. v. Genro II, Inc., 652 A.2d 948, 951 (Pa. Super. 1995); Champion v. Chandler, Civ. A. No. 96-7263, 1999 WL 820460, at *2-3 (E.D. Pa. Sep. 29, 1999).  Defendant does not identify for the Court any similar cooperation clause in its policy.
 Defendant also argues that Plaintiff cannot maintain her bad faith claim under 42 Pa.C.S. § 8371 since "[a] request permitted by the terms of insurance policy . . . cannot, as a matter of law, form the basis for a bad faith claim."  (Def.'s Mem. Supp. Mot. Judg. on the Pleadings 14.)  However, while Defendant would be entitled to a dismissal of the bad faith claim if its request for the medical examination was reasonable, the bad faith claim could theoretically proceed in the face of an unreasonable request for a medical examination.  As the Court has already found an issue of fact as to the reasonableness of Defendant's request, we decline to dismiss the bad faith allegation.

reasonableness of that request, and the justification for Plaintiff's refusal to attend the examination, remain at issue, thereby precluding judgment on the pleadings.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CELESTE WILLIAMS, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | NO. 08-3031 |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

**AND NOW**, this *14th* day of *January*, 2009, upon consideration of the Motion of Defendant Allstate Insurance Company ("Allstate") for Judgment on the Pleadings (Doc. No. 9), the Response thereto of Plaintiff Celeste Williams (Doc. No. 10), Defendant's Reply Brief (Doc. No. 12), and Plaintiff's Sur-reply Brief, it is hereby **ORDERED** that the Motion is **DENIED**.

It is further **ORDERED** that Defendant's Motion for Protective Order Staying Discovery (Doc. No. 8) is **DENIED AS MOOT**.

BY THE COURT:


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.